# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK
### WHITE PLAINS

| | |
|---|---|
| Elizabeth Russett, individually and on behalf of all others similarly situated, | 7:21-cv-08572 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Kellogg Sales Company, | |
| Defendant | Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.      Kellogg Sales Company ("defendant") manufactures, labels, markets, and sells "Whole Grain Frosted Strawberry Toaster Pastries" under its Pop-tarts brand ("Product").



2.      The packaging only depicts strawberries, in words and images, and shows the Product's bright red filling, matching the color of strawberries.

3.      The strawberry representations are misleading because the Product has less strawberries than consumers expect based on the labeling.

## I.      CONSUMERS VALUE STRAWBERRIES

4.      Research shows that consumers are eating fewer meals and more snacks.

5.      Many consumers seek snacks which are a "healthy indulgence," which is a "a treat with all the flavor and taste desired, without the guilt of eating something 'bad' for you," due to the presence of ingredients known to confer positive health benefits.[1]

6.      Defendant is aware that a greater percentage of consumers are eating more snacks and emphasizes the importance of valued fruit ingredients to make up for what people don't get enough of at meals.

7.      Strawberries are the world's most popular berry fruit.

8.      The USDA reports that "Americans now consume twice as many strawberries as they did two decades ago."[2]

9.      Consumers seek strawberries for their nutritive properties, because according to WebMD, they can "protect your heart, increase HDL (good) cholesterol, lower your blood pressure, and guard against cancer."[3]

10.      These benefits are because strawberries have one of the highest levels of nutrient-density of all fruits, and more nutrients than pears and apples, among other fruits.

---

[1] FONA International, Trend Insight: Indulgence, November 28, 2018.
[2] The California Strawberry Commission, Consumer Trends: American Strawberry Consumption Doubles, May 7, 2013.
[3] Andrea Gabrick, Nutritional Benefits of the Strawberry, WebMD.com; María Teresa Ariza, et al. "Strawberry achenes are an important source of bioactive compounds for human health." *International journal of molecular sciences* 17.7 (2016): 1103.

11.     Strawberries are "an excellent source of vitamin C," as one serving provides more vitamin C than an orange.[4]

12.     Vitamin C is an antioxidant necessary for immune and skin health.

13.     Strawberries have uniquely high levels of antioxidants known as polyphenols, micronutrients that naturally occur in plants.[5]

14.     These polyphenols include flavonoids, ellagitannins, flavanols and phenolic acid.[6]

15.     Polyphenols prevent or reverse cell damage caused by aging and the environment, which is linked to greater risk of chronic diseases.

16.     It is not just consumers' subjective preferences which value strawberries over other fruits.

17.     Market price data confirms strawberries are the most expensive of the major fruits tracked by the Bureau of Labor Statistics ("BLS") in its research on consumer prices.

18.     According to recent data from the USDA, pears are $1.552 per pound, while strawberries, at $2.318 per pound, are almost fifty (50) percent more expensive.

---

[4] Adda Bjarnadottir, MS, RDN, Strawberries 101: Nutrition Facts and Health Benefits, Healthline.com, March 27, 2019; Sadia Afrin, et al. "Promising health benefits of the strawberry: a focus on clinical studies." *Journal of agricultural and food chemistry* 64.22 (2016): 4435-4449.
[5] Tamara Y. Forbes-Hernandez, et al. "The healthy effects of strawberry polyphenols: which strategy behind antioxidant capacity?" *Critical reviews in food science and nutrition* 56.sup1 (2016): S46-S59.
[6] Francesca Giampieri, et al. "Strawberry consumption improves aging-associated impairments, mitochondrial biogenesis and functionality through the AMP-activated protein kinase signaling cascade." *Food chemistry* 234 (2017): 464-471; Francesca Giampieri, et al. "The healthy effects of strawberry bioactive compounds on molecular pathways related to chronic diseases." *Annals of the New York Academy of Sciences* 1398.1 (2017): 62-71.



| Pears, Anjou Units: $ per LB | Year | Jan | Feb | Mar | Apr | May | Jun | % chg. JUN ↓ | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 2021 | NA | NA | NA | NA | NA | NA | | NA | NA | NA | NA | NA | NA |
| | 2020 | NA | NA | NA | NA | NA | NA | | NA | NA | NA | NA | NA | NA |
| | 2019 | 1.634 | 1.586 | 1.601 | 1.601 | 1.635 | 1.614 | -0.4% | 1.552 | NA | NA | NA | NA | NA |
| | 2018 | 1.641 | 1.560 | 1.558 | 1.521 | 1.568 | 1.621 | -1.1% | 1.662 | NA | NA | NA | 1.513 | 1.570 |
| | 2017 | 1.577 | 1.570 | 1.599 | 1.602 | 1.597 | 1.639 | -0.7% | 1.629 | 1.653 | NA | NA | 1.614 | 1.545 |

APU0000711413 Pears, Anjou

| Strawberries Units: $ per 12 oz | Year | Jan | Feb | Mar | Apr | May | Jun | % chg. JUN ↓ | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 2021 | 3.044 | 2.893 | 2.700 | 2.803 | 2.648 | 2.318 | 14.8% | NA | NA | NA | NA | NA | NA |
| | 2020 | 2.884 | 2.558 | 2.367 | NA | 2.174 | 2.020 | -2.2% | 2.020 | 2.214 | 2.234 | 2.745 | 2.934 | 3.290 |
| | 2019 | 3.279 | 2.872 | 2.475 | 2.504 | 1.972 | 2.066 | 6.6% | 2.111 | 2.010 | 2.153 | 2.402 | 2.604 | 3.096 |
| | 2018 | 2.872 | 2.492 | 2.227 | 2.475 | 2.079 | 1.938 | -0.7% | 2.007 | 2.004 | 2.147 | 2.216 | 2.502 | 3.166 |
| | 2017 | 2.612 | 2.367 | 2.318 | 2.204 | 2.060 | 1.952 | 1.5% | 2.036 | 1.979 | 2.256 | 2.335 | 2.863 | 3.089 |

APU0000711415 Strawberries, dry pint, per 12 oz. (340.2 gm)

19.     According to BLS, apples are typically between $1.20 and $1.50 per pound while strawberries are no less than between $2 and $4 per pound.[7]



Chart 1. Average fruit prices, 2004–2014

Shaded area represents a recession as determined by the National Bureau of Economic Research.
Click legend items to change data display. Hover over chart to view data.
Source: U.S. Bureau of Labor Statistics.

---

[7] Stephen B. Reed, "Slicing through fruit price volatility," Beyond the Numbers: Prices and Spending, Vol. 3:28, Bureau of Labor Statistics, December 2014.

## II.  STATE AND FEDERAL REGULATIONS REQUIRE FRONT LABEL TO DISCLOSE THAT FRUIT FILLING IS MOSTLY NON-STRAWBERRIES

20.     Federal and identical state regulations require a product's front label to contain a common or usual name which accurately identifies or describes, "in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients." 21 C.F.R. § 102.5(a) *compare with* New York Agriculture and Markets Law ("AML"), 1 N.Y.C.R.R. 259.1 ("Packaging and labeling of food.") (adopting FDA labeling requirements).

21.     Whether the fruit content of a toaster pastry includes only strawberries, mostly strawberries or merely some strawberries, and mostly contains other less-valued fruit ingredients, is basic front label information consumers rely on when making quick decisions at the grocery store.

22.     Strawberries are the Product's characterizing ingredient, since their amount has a material bearing on price and consumer acceptance, and consumers expect they are present in an amount greater than other fruits.

23.     The Product's common or usual name of "Whole Grain Frosted Strawberry Toaster Pastries," is false, deceptive, and misleading, because it contains mostly non-strawberry fruit ingredients.

Ingredients: Whole wheat flour, sugar, corn syrup, enriched flour (wheat flour, niacin, reduced iron, vitamin B₁ [thiamin mononitrate], vitamin B₂ [riboflavin], folic acid), dextrose, soybean and palm oil, bleached wheat flour, polydextrose, glycerin. Contains 2% or less of fructose, wheat starch, calcium carbonate, salt, leavening (sodium acid pyrophosphate, baking soda), vegetable juice for color, dried pears, dried apples, dried strawberries, sodium stearoyl lactylate, citric acid, modified wheat starch, DATEM, cornstarch, gelatin, xanthan gum, brown rice syrup, paprika extract color, soy lecithin, vitamin A palmitate, niacinamide, reduced iron, vitamin B₆ (pyridoxine hydrochloride), vitamin B₂ (riboflavin), vitamin B₁ (thiamin hydrochloride).

**Ingredients:** Whole wheat flour, sugar, corn syrup, enriched flour (wheat flour, niacin, reduced iron, vitamin B1 [thiamin mononitrate], vitamin B2 [riboflavin], folic acid), **dextrose, soybean and palm oil, bleached wheat flour, polydextrose, glycerin. Contains 2% or less of** fructose, wheat starch, calcium carbonate, salt, leavening (sodium acid pyrophosphate, baking soda), vegetable juice for color, dried pears, dried apples, dried strawberries, sodium stearoyl lactylate, citric acid, modified wheat starch, DATEM, cornstarch, gelatin, xanthan gum, brown rice syrup, paprika extract color, soy lecithin, vitamin A palmitate, niacinamide, reduced iron, vitamin B6 (pyridoxine hydrochloride), vitamin B2 (riboflavin), vitamin B1 (thiamin hydrochloride).

24.     The sixteenth, seventeenth and eighteenth ingredients are "dried pears, dried apples, [and] dried strawberries."

25.     Because the relative amounts of the ingredients are determined based on their order of predominance by weight, the Product's filling contains more pears than strawberries, and more apples than strawberries. *See* 21 C.F.R. § 101.4(a)(1).

26.     The amount of strawberry ingredients is insufficient not merely to provide the nutrient benefits of strawberries but to provide a strawberry taste.

27.     The Product's name is misleading because strawberries are its characterizing ingredient, yet the labeling fails to disclose the Product merely *attempts* to taste like strawberries, provided Defendant can in good faith claim that this taste characterizes the Product, i.e., "Natural Strawberry Flavored Whole Grain Frosted Toaster Pastries." 21 C.F.R. § 101.22(i)

28.     The Product's name is required to, but fails, to include the percentage of the characterizing strawberry ingredients, vis-à-vis the pear and apple, or non-strawberry ingredients, because the amount of strawberries has a material bearing on price and consumer acceptance. 21 C.F.R. § 102.5(b).

29.     One examples of this disclosure could be, "Whole Grain Frosted Strawberry Toaster Pastries – 80% Non-Strawberry, 20% Strawberry." 21 C.F.R. § 102.5(b).

30.     The Product's name, "Whole Grain Frosted Strawberry Toaster Pastries," is misleading because it includes "Strawberry," but does not include pears and apples, even though the fine print of the ingredient list reveals the presence of more of these fruits than strawberries. 21 C.F.R. § 101.18(b).

31.     Toaster pastries which contain strawberries as their exclusive or predominant filling ingredient are not a rare or pricy delicacy that would make a reasonable consumer "double check" the relative amount of the strawberries by scouring the packaging and performing "mental math."

32.     These toaster pastries exist in the marketplace and are not technologically or otherwise unfeasible to produce.

33.     Moreover, competitor frosted toaster pastries from Great Value (Walmart) and Clover Valley (Dollar Tree) are described as "Strawberry," with pictures of strawberries, but they put consumers on notice that they have *less* strawberries than consumers would otherwise expect, through the statement, "Naturally & Artificially Flavored."





34.    Consumers seeing Defendant's Product, exclusively promoting strawberries, and not disclosing the greater individual amounts of pears and apples, and the more "restrained" or truthful labeling of competitors, will purchase Defendant's Product, believing it is higher quality than it is.

35.     The FDA has consistently warned companies that fail to describe their products with

a non-misleading, common, or usual name:

> Your Sour Cherry Juice (two unique brand names) and Sour
> Grape Juice (four unique brand names) products are
> misbranded within the meaning of section 403(i)(1) of the
> Act [21 U.S.C. § 343(i)(1)] because the statement of identity
> does not bear an accurate common or usual name. According
> to 21 CFR 102.33(a), for a carbonated or noncarbonated
> beverage that contains less than 100 percent and more than
> 0 percent fruit or vegetable juice, the common or usual name
> shall be a descriptive name that meets the requirements of 21
> CFR 102.5(a).[8]

36.     The marketing and sale of foods which are advertised as containing a greater amount

of strawberries than promised, is not an unknown issue.

37.     In the fall of 1960, the FDA seized a shipment of "Strawberry Bars" where:

> [S]trawberries, had been in whole or in part omitted or abstracted
> therefrom; 402(b) (4) – figs and dates had been mixed or packed
> with the articles so as to increase their bulk or weight and make them
> appear of greater value than they were; and 403(a)-the label
> statements and the label vignettes depicting whole fresh fruit,
> apricots and strawberries, were false and misleading as applied to an
> article (Apricot Bars) containing no apricots, and an article
> (Strawberry Bars) containing a mixture of figs and dates and some
> strawberries.
>
> FDA, Notices of Judgment, No. 28302, "Fruit Bars," F.D.C. No.
> 45358, E. Dist. Mich., July 11, 1961.

38.     The Product is unable to confer any of the health-related benefits of strawberries

because the amount of strawberries is insufficient to provide the benefits of this fruit.

## III.  LABEL'S RELATIVELY TRUTHFUL "WHOLE GRAIN" STATEMENTS CREATE EXPECTATION THAT OTHER STATEMENTS WILL BE TRUTHFUL

39.     The front label states, "Made With Whole Grain" in large capital letters.

40.     In whole grain flour, all three parts of the grain are used as opposed to enriched flour,

---

[8] FDA Warning Letter, Shemshad Food Products, Inc., W/L 28-11, March 11, 2011.

which only uses the endosperm.

41.     Surveys have confirmed that consumers increasingly seek products made with whole grains because they contain more fiber than refined white flour.[9]

42.     Specifically, these findings indicate that:

- At least half of consumers expect that for every gram of whole grain per serving, there will be at least a gram of fiber;

- Two-thirds of consumers (67%) agree that whole grain foods are high in fiber;

- Use of a whole grain claim is equivalent to a representation that the product will predominantly be made with whole grains; and

- 75% of consumers who observe claims that a product is made with, or contains whole grain flour, will expect the food to be at least a good source of fiber.

43.     The 2015 Dietary Guidelines for Americans recommended that at least half of the grains in a healthy diet should be whole grains.[10]

44.     Consistent with the Product's "whole grain" claim, the Product contains (1) almost twenty percent of the daily value of fiber per serving and (2) its predominant ingredient is "Whole wheat flour," while "enriched flour" is a distant fourth, after "sugar [and] corn syrup."

45.     While consumers would be alright with trusting Defendant's "whole grain" claim, they would be wrong in trusting the "strawberry" claims.

---

[9] FDA-2006-D-0298-0016, Exhibit 1a - "A Survey of Consumers Whole Grain & Fiber Consumption Behaviors, and the Perception of Whole Grain Foods as a Source of Dietary Fiber" - [Kellogg Company - Comment] (July 1, 2010); Docket ID: FDA-2006-D-0298, Guidance for Industry and FDA Staff: Whole Grains Label Statements.
[10] U.S. DEP'T OF AGRIC. AND U.S. DEP'T OF HEALTH & HUMAN SERVS., *Dietary Guidelines for Americans 2015–2020* (8th ed. 2015), *available at* http://goo.gl/qnyfLi (click "A Closer Look Inside Healthy Eating Patterns" under "Chapter 1. Key Elements of Healthy Eating Patterns").

## IV.   ADDED COLOR FURTHERS DECEPTION AS TO STRAWBERRY CONTENT

46.    The Product's filling is shown on the front label as red, the color of strawberries.

47.    According to the head of a prominent flavor and color manufacturer, "Color is the first thing a consumer may consider when purchasing a food or beverage item."

48.    To give consumers the false impression that the Product contains more strawberries than it does, it includes "vegetable juice for color" and "paprika extract color."

49.    This causes the mainly pear and apple filling to look red, like it would if it contained more strawberries, even though it contains a *de minimis* or negligible amount of strawberries.

50.    Without the added coloring, consumers would be suspect of a product labeled as only having strawberries, because the filling's color would be lighter instead of the red color.

51.    This could cause consumers to inspect the ingredient list to determine the truth.

52.    Additionally, according to the trade publication Food Processing, the addition of vegetable juice to color the fruit filling is "considered artificial since the [vegetable juice] is not inherent to the strawberry."

53.    However, the Product does not reveal the addition of this artificial coloring anywhere on the labeling other than the ingredient list, even though it is required to.

## V.   CONCLUSION

54.    Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives.

55.    By labeling the Product in this manner, Defendant gained an advantage against other companies, and against consumers seeking to purchase a product with more of the named ingredient than it contained.

56.     The value of the Product that plaintiff purchased was materially less than its value as represented by defendant.

57.     Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

58.     Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

59.     The Product is sold for a price premium compared to other similar products, no less than approximately $4.79 per box of six pouches of two pastries six pastries (20.3 oz or 576g), a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

60.     Similar whole grain frosted toaster pastries which have equivalent amounts of strawberries to Defendant's Product are, or would be sold for, approximately $4.09 per box of six pouches of two pastries six pastries (20.3 oz or 576g).

<u>Jurisdiction and Venue</u>

61.     Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

62.     The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

63.     Plaintiff Elizabeth Russett is a citizen of New York.

64.     Defendant Kellogg Sales Company is a Delaware corporation with a principal place of business in Battle Creek, Calhoun County, Michigan.

65.     Plaintiff and defendant are citizens of different states.

66.     Defendant transacts business within this district, through the marketing, supply, and

sales of its products at stores of all kinds within this district and causes the Product to be sold to citizens of this district.

67.     Venue is in this district because plaintiff resides in this district and the actions giving rise to the claims occurred within this district.

68.     Venue is in the White Plains division of this District because a substantial part of the events or omissions giving rise to the claim occurred in Dutchess County, i.e., Plaintiff's purchase of the Product and her awareness of the issues described here.

Parties

69.     Plaintiff Elizabeth Russett is a citizen of Beacon, Dutchess County, New York.

70.     Plaintiff likes strawberries for the same reason they are America's number one berry fruit.

71.     Defendant Kellogg Sales Company, is a Delaware corporation with a principal place of business in Battle Creek, Michigan, Calhoun County.

72.     Defendant is one of the largest food manufacturers in the world.

73.     Defendant's founding was based upon its desire to improve the health of medical patients, leading to the innovative corn flakes cereal.

74.     For over a hundred years, parents and their children have grown up trusting Kellogg's products, as they are part of the fabric of American life.

75.     Defendant is known as a pioneer of breakfast and snack foods – Special K, Corn Flakes, Nutri-Grain Bars, BelVita, and Pop-Tarts, among other items.

76.     Defendant maintains a great amount of trust and goodwill from consumers.

77.     The Product is sold at tens of thousands of locations – schools, grocery stores, drug stores, big box stores, religious groups, cafeterias, convenience stores, etc. – and online.

78.    The Product is sold in various quantities including (1) packets containing one or two toaster pastries, and (2) boxes which contain ten individually-wrapped toaster pastries or six packages of two toaster pastries.

79.    Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at stores and locations which may include Walmart, 26 W Merritt Blvd, Fishkill, NY 12524, between 2020 and 2021, among other times.

80.    Plaintiff bought the Product because she expected it had a greater absolute and relative amount of strawberries because that is what the front label said.

81.    Plaintiff relied on the word, "Strawberry," the pictures of strawberries, the red filling, the trusted brand name, and the other representations identified here.

82.    Plaintiff bought the Product at or exceeding the above-referenced price.

83.    Plaintiff expected the Product had more strawberry than it did and certainly did not expect *more* pears and apples, individually, than strawberries.

84.    Plaintiff was misled by the dark red color of the filling shown on the front label.

85.    Plaintiff relied on the whole grain claim, which was true, and had no reason to expect that the strawberry claim was not true.

86.    Plaintiff would not have purchased the Product if she knew the representations were false and misleading or would have paid less for it.

87.    Plaintiff chose between Defendant's Product and other similar products which were represented similarly, but which did not misrepresent their attributes and/or lower-priced products which did not make the statements and claims made by Defendant.

88.    The Product was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

89.     Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's representations are consistent with its composition.

90.     Plaintiff is unable to rely on the labeling of this, and other Kellogg products, which means she buys less Kellogg's food than before being aware of this issue.

91.     Plaintiff wants to resume purchasing Kellogg products in the same amount as she previously did.

Class Allegations

92.     Plaintiff seeks certification under Fed. R. Civ. P. 23(b)(2) and (b)(3) of the following classes:

> **New York Class:** All persons in the State of New York who purchased the Product during the statutes of limitations for each cause of action alleged.

> **Consumer Fraud Multi-State Class:** All persons in the States of Kansas, Wyoming, and Delaware, who purchased the Product during the statutes of limitations for each cause of action alleged

93.     Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

94.     Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

95.     Plaintiff is an adequate representative because her interests do not conflict with other members.

96.     No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

97.     Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

98.   Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

99.   Plaintiff seeks class-wide injunctive relief because the practices continue.

### New York General Business Law ("GBL") §§ 349 & 350

### (Consumer Protection Statute)

100.   Plaintiff incorporates by reference all preceding paragraphs.

101.   Plaintiff and class members desired to purchase a product that had a greater absolute and relative amount of strawberries.

102.   Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

103.   Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

104.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

105.   Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

106.   Plaintiff relied on the representations and omissions that the Product characterizing ingredient was strawberries, and had the benefits associated with that ingredient.

107.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Violation of State Consumer Fraud Acts

### (On Behalf of the Consumer Fraud Multi-State Class)

108.   The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class

prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

109.  Defendant intended that plaintiff and each of the other members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

110.  As a result of defendant's use or employment of artifice, unfair or deceptive acts or business practices, plaintiff, and each of the other members of the Consumer Fraud Multi-State Class, have sustained damages in an amount to be proven at trial.

111.  In addition, defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

Breaches of Express Warranty,<br>
Implied Warranty of Merchantability and<br>
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, <em>et seq</em>.

112.  The Product was manufactured, identified, and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it had a greater absolute and relative amount of strawberries.

113.  Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

114.  This duty is based on Defendant's outsized role in the market as a trusted brand and the pioneer of breakfast food, a literal household name, such that consumers trust it to be honest.

115.  Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers, and their employees.

116.  Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices.

117.  The Product did not conform to its affirmations of fact and promises due to defendant's actions and was not merchantable because it was not fit to pass in the trade as

advertised.

118.  Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Negligent Misrepresentation

119.  Defendant had a duty to truthfully represent the Product, which it breached.

120.  This duty is based on defendant's position, holding itself out as having special knowledge and experience in this area, as the inventor of breakfast foods and a force for good in the development of Americans' diets.

121.  The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, the leading company in the area of breakfast foods.

122.  Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

123.  Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Fraud

124.  Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it had a greater absolute and relative amount of strawberries.

125.  Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provide it with actual and/or constructive knowledge of the falsity of the representations.

126.  Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

## Unjust Enrichment

127.   Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

 **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   October 19, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com